UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 4:03-cr-00064-RBH-2 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Cory Collins, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In 2003, this Court[1] sentenced Defendant Cory Collins to 183 months' imprisonment and five years' supervised release after he pled guilty to charges stemming from an armed bank robbery.[2] *See* ECF Nos. 53 & 58. In March 2017, he was released from prison, and in April 2017, he was arrested and charged in North Carolina with two counts of assault with a deadly weapon with intent to kill inflicting serious injury. *See* ECF Nos. 109 & 110 at p. 2. The United States Probation Office petitioned the Court to issue an arrest warrant for Defendant alleging he had violated the conditions of his supervised release by (1) engaging in new criminal conduct (the assault charges), (2) testing positive for marijuana, and (3) failing to pay restitution. *See* ECF No. 109. On May 5, 2017, the Court signed an order authorizing Defendant's arrest, and on December 6, 2017, the warrant was served on Defendant. *See* ECF Nos. 110, 111, & 119. On January 2, 2018, Defendant had his initial appearance before the Magistrate Judge, and he remains in federal custody. *See* ECF Nos. 120 through 132.

## **Discussion**

The Probation Office has prepared a Supervised Release Violation Report ("the Report")

---

[1] The Honorable C. Weston Houck originally presided over this case, and after his passing in 2017, this case was reassigned to the undersigned district judge on July 28, 2017. *See* ECF No. 113.

[2] Defendant pled guilty to armed bank robbery, 18 U.S.C. § 2113(a), (d) (2000), and aiding and abetting, 18 U.S.C. § 2 (2000) (Count 1); and using or carrying a firearm during a crime of violence, 18 U.S.C. § 924(c) (2000), and aiding and abetting, 18 U.S.C. § 2 (2000) (Count 2).

indicating Defendant has committed three violations of his supervised release. *See* ECF No. 133.[3] The Report designates these violations as "**Violation No. 1 – New Criminal Conduct**," "**Violation No. 2 – Illegal Use of Drugs (Marijuana)**," and "**Violation No. 3 – Failure to Pay Restitution**." *Id.* at p. 4. The Court is primarily concerned with Violation No. 1, which alleges that in April 2017 (the month after Defendant was released from prison), Defendant assaulted two victims with a large folding knife and was charged in Union County, North Carolina, with two counts of assault with a deadly weapon with intent to kill inflicting serious injury. *Id.* The Report indicates Defendant was jailed in North Carolina until both counts were dismissed on December 5, 2017; according to the dismissal form, there was insufficient evidence to warrant prosecution because the state's witnesses/victims refused to cooperate and/or testify. *Id.* The Report further states, "*The Government has advised the U.S. Probation Office that they will not provide testimony at the Violation Hearing to prove Violation No. 1. As such, this violation will not be litigated and none of the sentencing options listed in this report have been based on this violation.*" *Id.*

The Court is somewhat perplexed by the Government's position regarding Violation No. 1, given the nature of the alleged criminal conduct described in Violation No. 1 and the fact that such conduct, if proven, would qualify as ***two separate*** Grade A violations.[4] Additionally, Fed. R. Crim. P.

---

[3] Docket number 133 is a "Court-only" entry and is not publicly accessible.

[4] A Grade A violation of supervised release is "conduct constituting *(A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence*, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years." U.S.S.G. § 7B1.1(a)(1) (emphasis added). The North Carolina offense of assault with a deadly weapon with intent to kill inflicting serious injury, codified at N.C. Gen. Stat. § 14–32(a), is a crime of violence for purposes of the Sentencing Guidelines. *See United States v. Little*, 704 F. App'x 298, 299 (4th Cir. 2017); *cf.* U.S.S.G. § 7B1.1 (Application Note 2). *See also United States v. Townsend*, __ F.3d __, __, 2018 WL 1547107, at *3 (4th Cir. Mar. 30, 2018) (holding assault with a deadly weapon with intent to kill inflicting serious injury "is categorically a violent felony under the force clause of the" Armed Career Criminal Act); *United States v. Montes-Flores*, 736 F.3d 357, 363 (4th Cir. 2013) (recognizing precedents evaluating whether an offense constitutes a crime of violence under the

2

32.1(b) and *United States v. Doswell*, 670 F.3d 526, 530 (4th Cir. 2012), provide for the admission of hearsay evidence under appropriate circumstances. At this juncture, the Court does not know if the Government can meet the admissibility standards of evidence regarding these potential violations as to one of the victims, both of the victims, or neither of the victims. It is the Court's understanding from discussions with the Probation Office that at least in one of the alleged assaults, the victim may have spoken with a law enforcement officer at the hospital and may have identified Defendant as his assailant.

Although the Government apparently does not want to go forward on Violation No. 1, the Court believes revocation procedures should be initiated for the Court to make a determination whether the Government has or can meet its burden of proof using appropriate evidentiary standards for a revocation proceeding under Rule 32.1(b)(2). Ample authority supports the Court's ability to initiate revocation proceedings sua sponte. *See United States v. Ahlemeier*, 391 F.3d 915, 923 (8th Cir. 2004); *United States v. Amatel*, 346 F.3d 278, 280 (2d Cir. 2003); *United States v. Cofield*, 233 F.3d 405, 409 (6th Cir. 2000), *cert. denied* 532 U.S. 952 (2001); *United States v. Bermudez-Plaza*, 221 F.3d 231, 233 (1st Cir. 2000); *United States v. Mejia-Sanchez*, 172 F.3d 1172, 1174–76 (9th Cir. 1999), *cert. denied*, 528 U.S. 982 (1999); *United States v. Davis*, 151 F.3d 1304, 1306–08 (10th Cir. 1998). In *Davis*—the leading case on this issue—the Tenth Circuit explained:

> Probation revocation proceedings are not criminal proceedings, *see Minnesota v. Murphy*, 465 U.S. 420, 435–36 n.7 (1984), and there is no requirement that revocation proceedings be initiated by a particular officer of the government, or by any officer. ***The sentencing court may initiate such proceedings sua sponte based on information acquired from any source, including the probation officer***

---

Sentencing Guidelines are interchangeable with precedents evaluating whether an offense constitutes a violent felony under the Armed Career Criminal Act).

3

> ***who . . . is primarily responsible for acquiring and presenting such information to the sentencing court.*** Moreover, because the ongoing relationship between the sentencing court and the defendant is created by the imposition of a term of supervised release, placing the sole discretion to initiate a revocation proceeding with the U.S. Attorney would be tantamount to abdicating the Judiciary's sentencing responsibility to the Executive. Though the U.S. Attorney retains discretion to file new criminal charges against the defendant arising from the defendant's violation of conditions of release which are criminal in nature, we reject [the] view of the U.S. Attorney as the only officer who may initiate revocation of supervised release.

151 F.3d 1304, 1307–08 (10th Cir. 1998) (internal quotation marks and some internal citations omitted) (emphasis added).[5] Significantly, although the Fourth Circuit Court of Appeals has not addressed the issue in a published opinion, it has favorably cited the holding in *Davis* as well as the Ninth's Circuit similar holding in *Mejia-Sanchez*, *supra*. *See United States v. Wright*, 1 F. App'x 222 (4th Cir. 2001) ("We further find that the revocation proceedings were not invalid because the probation officer filed a petition on supervised release recommending that Wright's supervised release be revoked." (citing *Mejia-Sanchez* and *Davis*, *supra*)).

Furthermore, the Fourth Circuit has acknowledged that "a probation officer continues to be a neutral, information-gathering agent of the court, not an agent of the prosecution." *United States v. Johnson*, 935 F.2d 47, 49–50 (4th Cir. 1991), and that "a supervised release revocation proceeding is not a criminal prosecution." *United States v. Ward*, 770 F.3d 1090, 1099 (4th Cir. 2014); *see id.* at 1097 ("The distinction between a criminal prosecution and a supervised release revocation proceeding extends beyond mere labels. In contrast to a criminal trial, a supervised release revocation hearing is

---

[5] In fact, at least one district court has gone forward on a supervised release violation proceeding even after the Government filed a motion to dismiss the Probation Office's petition. *See United States v. Nava*, 2013 WL 5940127, at *1, 4–5 (D. Nev. Nov. 4, 2013) ("The Court denied the Government's motion to dismiss the revocation petition based upon its review of the police reports and witness statements. . . . [A]s *Mejia-Sanchez* states, it is the district court who ultimately decides whether to initiate the proceedings. 172 F.3d at 1175.").

a less formal proceeding in which the violative conduct need not be criminal in nature."). Given the informal nature of a revocation proceeding, the Fourth Circuit has recognized "the rules of evidence, including those pertaining to hearsay, need not be strictly applied." *Doswell*, 670 F.3d at 530. Hearsay evidence is admissible under Rule 32.1 if it "is reliable and the Government has offered a satisfactory explanation for not producing the adverse witness." *Id.* at 531.[6] Of course, under Rule 32.1(b)(2)(C), a defendant has a due process right to "to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear," Fed. R. Crim. P. 32.1(b)(2)(C), and "prior to admitting hearsay evidence in a revocation hearing, the district court must balance the releasee's interest in confronting an adverse witness against any proffered good cause for denying such confrontation." *Doswell*, 670 F.3d at 530.

In sum, the Court will hold an evidentiary hearing on ***all*** of the violations alleged in the Report, including the new criminal conduct described in Violation No. 1.[7] The violations in "Violation No. 1" should be treated as two separate violations in the Report, which should be amended to reflect such. Of course, the Court is not making any finding at this time as to whether Defendant actually violated a condition of his supervised release, and the Court's ultimate decision will be based on the evidence presented at the revocation hearing. *See generally* 18 U.S.C. § 3583; Fed. R. Crim. P. 32.1(b).

## **Conclusion**

---

[6] Thus, if the Government believes hearsay testimony is categorically inadmissible to prove Defendant has violated a condition of his supervised release, that belief is wrong. *See Doswell*, *supra*.

[7] Before a district court revokes supervised release, a defendant is entitled to a revocation hearing. *See* Fed. R. Crim. P. 32.1(b)(2). In connection with that hearing, a defendant is entitled to: "(A) written notice of the alleged violation; (B) disclosure of the evidence against the person; (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and (E) an opportunity to make a statement and present any information in mitigation." *Id.* The district court may revoke supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3).

The Court will initiate revocation proceedings on the new criminal conduct described in Violation No. 1 of the Report. **The Government should be prepared to litigate all violations.** The Court further directs the Probation Office to revise the Report to reflect that Violation No. 1 is actually two separate violations based on Defendant's alleged commission of two assaults.[8]  The Report should also include sentencing options based on those two separate violations. Once the revised Report is completed, the Court will set a date for the revocation hearing.

**IT IS SO ORDERED.**

Florence, South Carolina  
April 10, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

---

[8] Thus, the revised Report should include a total of **four** violations: "**Violation No. 1 – New Criminal Conduct**"; "**Violation No. 2 – New Criminal Conduct**"; "**Violation No. 3 – Illegal Use of Drugs (Marijuana)**"; and "**Violation No. 4 –Failure to Pay Restitution**."